[Cite as *Cook v. Pitter Patter Learning Ctr., L.L.C.*, 2022-Ohio-961.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| LINDA K. COOK | : | |
| | : | |
| Plaintiff/Appellant | : | Appellate Case No. 29260 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-1628 |
| | : | |
| PITTER PATTER LEARNING | : | (Civil Appeal from |
| CENTER, LLC, et al. | : | Common Pleas Court) |
| | : | |
| Defendants/Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2022.

. . . . . . . . . . .

JASON P. MATTHEWS, Atty. Reg. No. 0073144 and MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142, 130 West Second Street, Suite 924, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant

MATTHEW D. STOKELY, Atty. Reg. No. 0062611 and KRISTINA ELIZABETH CURRY, Atty. Reg. No. 0084084, 40 North Main Street, Suite 2700, Dayton, Ohio 45423
    Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant, Linda Cook, appeals from a judgment dismissing her complaint against Defendants-Appellees, Pitter Patter Learning Center, LLC, and Zandra Phillips (collectively, "Appellees"). According to Cook, the trial court erred in dismissing the complaint because it failed to apply the proper standard of review. Cook also argues that the court failed to properly consider evidence about judicial estoppel.

**{¶ 2}** We conclude that dismissal of the complaint was partly based on incorrect factual conclusions related to the application of judicial estoppel. Accordingly, the trial court erred in dismissing Cook's complaint. Furthermore, an alleged lacked of standing due to Cook's Chapter 13 bankruptcy filing does not provide an alternate reason to affirm the dismissal. Cook had standing when the complaint was filed because she asserted that Appellees had caused her injury and damages by unlawfully terminating her employment, by failing to pay wages, by failing to pay minimum wages, and by illegally accessing her electronically-stored information. At that point, Cook had not yet filed for bankruptcy, and standing existed.

**{¶ 3}** Whether the bankruptcy trustee subsequently became a real party in interest, depriving Cook of standing, or whether Cook had a concurrent interest for purposes of standing due to differences between Chapter 7 and Chapter 13 bankruptcy proceedings is for the trial court to decide on remand, along with the issue of judicial estoppel. Accordingly, the judgment of the trial court will be reversed and remanded for further proceedings.

## I. Facts and Course of Proceedings

{¶ 4} On April 3, 2020, Cook filed a complaint against Appellees, alleging that her employment had been terminated in violation of R.C. 5113.52, Ohio's "whistleblower" statute, and R.C. 5104.10, which precludes childcare employers from taking retaliatory actions against employees who have made good faith oral or written complaints to the director of job and family services. Cook also alleged that Appellees had failed to pay wages, had failed to pay minimum wages, and had illegally accessed her electronically-stored communications in violation of state and federal law.

{¶ 5} The claims arose from Cook's employment with Pitter Patter, which is a licensed daycare facility. According to the complaint, Cook was employed at Pitter Patter as an administrator from July 8, 2019 through October 9, 2019, and reported to Zandra Phillips. Complaint, ¶ 5 and 7. Cook's job performance and conduct were satisfactory during her employment. *Id.* at ¶ 6. During her employment, Cook reported unsafe conditions to Phillips, including children's access to prescription medication and sharp objects and improper staff-to-child ratios. However, Phillips failed to correct the conditions. *Id.* at ¶ 7. As a result, Cook sent an email on October 8, 2019, to a Day Care Licensing Specialist for the Ohio Department of Job and Family Services ("ODJFS"), asking to speak with him about unsafe conditions at the daycare center. *Id.*

{¶ 6} Cook sent the email using her private mobile phone and personal email account. *Id.* at ¶ 8. However, on October 9, 2019, Phillips handed Cook a printed copy of email communications between ODJFS and Cook and terminated Cook's employment. *Id.* at ¶ 9. Cook then filed the current action against Appellees, Phillips and Pitter Patter.

{¶ 7} After receiving an extension of time to plead, Appellees filed an answer to

the complaint on June 3, 2020. Following a pretrial conference, the court set various litigation dates, including a January 21, 2021 discovery cutoff and a February 8, 2021 jury trial.

{¶ 8} On December 3, 2021, Appellees filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(1) and, alternatively, Civ.R. 12(C), based on Cook's failure to disclose the existence of her action against Appellees when she filed for a Chapter 13 bankruptcy. By agreement of the parties, the court vacated the trial date and granted Cook an extension of time to reply to the motion to dismiss. Cook then filed a response to the motion on December 29, 2020, arguing that her failure to list the claim against Appellees was inadvertent. As support, Cook attached her trial attorney's affidavit and several other documents.

{¶ 9} On the same day, Cook also filed a motion in the trial court seeking to substitute the bankruptcy trustee as a real party in interest under Civ.R. 17(A). Again, Cook attached several documents, including the docket sheet for her bankruptcy case and her trial attorney's affidavit.

{¶ 10} Another pretrial order was filed on January 7, 2021, setting trial for October 25, 2021. On February 9, 2021, Appellees responded to the motion to add the bankruptcy trustee and to Cook's memorandum concerning the motion to dismiss.

{¶ 11} Along with a subsequent memorandum, Cook included her own affidavit, in which she said she had informed her bankruptcy attorney of the pending litigation. She further stated that this attorney and his staff had prepared the bankruptcy filings and had not given her an opportunity to review them before filing. Cook therefore claimed she

had no knowledge that the common pleas court litigation had been omitted until Appellees' motion to dismiss was filed. Plaintiff's Reply Memorandum in Support of Her Motion to Substitute Bankruptcy Trustee as Real Party in Interest (Feb. 16. 2021) ("Substitution Motion"), Cook Affidavit, p. 1-2. Appellees filed a surrreply to this memorandum on February 23, 2021.

{¶ 12} On September 9, 2021, the trial court filed an order and entry sustaining Appellees' motion to dismiss and dismissing Cook's complaint. This timely appeal followed.

## II. Alleged Error in Dismissal of the Complaint

{¶ 13} Cook's sole assignment of error states that:

The Trial Court Erred by Granting the Motion to Dismiss Filed by Defendants-Appellees.

{¶ 14} Cook first contends that the trial court failed to apply the correct standard of review under Civ.R. 12(B)(1) or Civ.R.12(C). Specifically, Cook argues that the court made judgments on facts outside the pleadings, which is appropriate for summary judgment situations but not for motions to dismiss or motions for judgment on the pleadings. Cook further contends that because her intent was in question, this matter was not suitable for disposition by summary judgment. Following that discussion, Cook addresses the merits of dismissing the case. Before we consider these issues, we will outline the relevant standards.

## A. Applicable Standards

{¶ 15} As noted, Appellees' motion to dismiss was based on Civ.R. 12(B)(1) and, alternatively, on Civ.R. 12(C). Civ.R. 12(B)(1) concerns dismissal based on "lack of jurisdiction over the subject matter," and Civ.R. 12(C) pertains to motions for judgment on the pleadings.

{¶ 16} "The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989), citing *Avco Fin. Servs. Loan, Inc. v. Hale*, 36 Ohio App.3d 65, 67, 520 N.E.2d 1378 (10th Dist.1987). "In determining whether a plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, a trial court is not confined to the allegations of the complaint, and it may consider evidentiary material pertinent to such inquiry without converting the motion to a motion for summary judgment." *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 39-40, 637 N.E.2d 397 (8th Dist.1994), citing *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 358 N.E.2d 526 (1976).

{¶ 17} Appellate review of dismissals under Civ.R. 12(B)(1) is de novo. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State of Ohio*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 12. This means we apply the same standards as the trial court. *Carter v. Trotwood-Madison City Bd. of Edn.*, 181 Ohio App.3d 764, 2009-Ohio-1769, 910 N.E.2d 1088, ¶ 26 (2d Dist.).

{¶ 18} Unlike Civ.R. 12(B)(1), a decision on "a motion for judgment on the

pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint." *Dearth v. Stanley*, 2d Dist. Montgomery No. 22180, 2008-Ohio-487, ¶ 24, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165, 297 N.E.2d 113 (1973).

{¶ 19} "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. * * * Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996).

{¶ 20} Appellate review of decisions made under Civ.R. 12(C) is also de novo. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18. This is because the motion presents only questions of law. *Id.*

{¶ 21} With these standards in mind, we return to consideration of Cook's arguments.

## B. Trial Court Application of Standards

{¶ 22} Cook's first argument is that the trial court erred in failing to apply the correct standards for dismissal under Civ.R. 12 and in considering matters outside the pleadings. The trial court's decision was very brief and did not indicate whether it was relying on Civ.R. 12(B)(1) or (C). However, the trial court could not have relied solely on the

pleadings, because the fact of Cook's bankruptcy case was not disclosed in the pleadings and was brought to the court's attention well after the pleadings had closed.

{¶ 23} The Ohio Rules of Civil Procedure define "pleadings" as a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Civ.R. 14; and a third-party answer, if a third-party complaint is served." Civ.R. 7(A). The pleadings, as relevant here, were Cook's complaint and Appellees' answer. Nothing in these documents indicates any deficiency in Cook's ability to bring or maintain an action, and judgment therefore could not have been based on Civ.R. 12(C).

{¶ 24} The crux of the argument against Cook is that she failed to disclose her pending lawsuit when she filed for bankruptcy. This would not have been discovered during the pleading stage because Cook had not yet filed the bankruptcy action when the complaint was filed. In fact, Cook did not file the bankruptcy action until two months later. Matters pertinent to the bankruptcy filing would obviously have been outside the pleadings in the pending lawsuit.

{¶ 25} As indicated, Civ.R. 12(B)(1) allows consideration of matters outside the pleadings. We have not found authority in Ohio discussing judicial estoppel in the context of Civ.R. 12(B)(1), which applies to dismissals based on "lack of jurisdiction over the subject matter."

{¶ 26} Judicial estoppel is an equitable doctrine that courts use at their discretion "to prevent 'improper use of judicial machinery.' " *New Hampshire v. Maine*, 532 U.S.

742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C.Cir.1980). In *New Hampshire*, the United States Supreme Court decided that judicial estoppel fit best a controversy between two states over a river boundary that these states had previously litigated. *Id.* at 749. While the procedural context of *New Hampshire* involved dismissal of an original complaint, the Supreme Court did not mention any particular dismissal vehicle such as lack of jurisdiction or failure to state a claim. *Id.* at 745. However, the court only considered documents filed in the prior action and did not consider other facts outside the record. *Id.* at 746-748 and 751-754. That contrasts with the situation before us, where the evidence included pleadings in another case (the bankruptcy), as well as affidavits from both Cook and her attorney about events that occurred.

**{¶ 27}** In the context of bankruptcy situations, summary judgment is typically employed, due to reliance on facts that would be outside the record. *E.g. White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475 (6th Cir.2010) (converting a Fed.Civ.R. 12(B)(6) motion into a motion for summary judgment). *See also Saha v. Research Inst. at Nationwide Children's Hosp.*, 10th Dist. Franklin No. 12AP-590, 2013-Ohio-4203, ¶ 8 and 16-17 (converting a motion to dismiss to a summary judgment motion). Thus, converting Appellees' motion into one for summary judgment would probably have been the better course of action here.

**{¶ 28}** From the documents in the record, it appears that Cook first disclosed the bankruptcy filing in her answers to interrogatories, which were sent to Appellees on September 18, 2020. *See* Response in Opposition to Defendants' Motion to Dismiss

(Dec. 29, 2020), Affidavit of Matthew Schultz attached as Ex. A, ¶ 4-5, and Ex.1A attached to Schultz's Affidavit, p. 5 and 14.

{¶ 29} Shortly after Cook's deposition was taken on November 11, 2020, Appellees' counsel "confirmed" the bankruptcy filing. Defendants' Motion to Dismiss (December 2, 2021), p. 3 and Affidavit of Matthew Stokely, attached as Ex. F. Appellees then filed their motion to dismiss on December 2, 2020.[1]

{¶ 30} When the motion to dismiss was filed, the summary judgment deadline had expired. However, on December 17, 2020, the trial court vacated the trial date at the parties' joint request and allowed Cook two additional weeks to reply to the motion. Agreed Decision, Order, and Entry Vacating the Trial Date (Dec. 17, 2020), p. 1. On December 29, 2020, Cook filed a response, which included her attorney's affidavit and documents. She also filed her own affidavit on February 16, 2021, as part of her request to substitute the bankruptcy trustee as plaintiff.

{¶ 31} In view of these facts, Cook was aware that the trial court would be considering matters outside the record in deciding Appellees' motion. She did not object, and, in fact, it would have been impossible to decide the motion without reviewing evidence that was not in the pleadings. As a result, Cook waived any objection to the procedure and to the court's review of matters outside the record. Courts have " 'consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial

---

[1] Appellees did not explain the nearly three-month delay in filing the motion to dismiss. After receiving the interrogatory answers, the information could have easily been "confirmed" by looking at the bankruptcy records.

court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Simmons*, 2d Dist. Montgomery No. 23991, 2011-Ohio-5561, ¶ 31, quoting *State v. Williams*, 51 Ohio St.2d 112, 117, 364 N.E.2d 1364 (1977*), vacated in part on other grounds*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156 (1978).

## C.   Alleged Material Facts

**{¶ 32}** Cook's second argument is that the trial court should not have decided the issue of her intent, as that was a factual issue for trial.   In view of our finding that Cook waived objection to the court's considering matters outside the pleadings, a summary judgment standard is appropriate here.

**{¶ 33}** "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."   *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).   The law is well-settled that in reviewing summary judgment decisions, we conduct de novo review, "which means that we apply the same standards as the trial court*." GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

**{¶ 34}** The issue before the trial court was whether Cook was precluded from

proceeding with her action against Appellees because she failed to disclose that she had filed for bankruptcy two months after she filed the complaint in the common pleas court. A considerable body of law exists indicating that judicial estoppel can apply in such situations.

{¶ 35} Judicial estoppel is used where a litigant fails to disclose bankruptcy proceedings because "[a] debtor has an affirmative duty to disclose all of its assets to the bankruptcy court." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir.2002), citing 11 U.S.C. 521. These assets would include sums a party expects to recover or has recovered in litigation because they could be used to satisfy creditors' claims.

{¶ 36} "The doctrine of judicial estoppel forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.' " *Teledyne Industries, Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217 (6th Cir.1990), quoting *Reynolds v. Commr. of Internal Revenue*, 861 F.2d 469, 472-473 (6th Cir.1988). *See also Greer-Burger v. Temesi,* 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 5 and 24-31 (applying judicial estoppel where plaintiff discharged attorney fees in bankruptcy, but failed to list her pending retaliation claim, for which she ultimately received attorney fees, on the schedule of assets in the bankruptcy case).

{¶ 37} "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Industries* at 1217-1218; *see also Greer-Burger* at ¶ 25. This doctrine " 'applies only when a party shows that his opponent: (1) took a

contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court.' " *Cavins v. S & B Health Care, Inc.*, 2015-Ohio-4119, 39 N.E.3d 1287, ¶ 84 (2d Dist.), quoting *Smith v. Dillard Dept. Stores, Inc.*, 139 Ohio App.3d 525, 744 N.E.2d 1198 (8th Dist.2000).

**{¶ 38}** Judicial estoppel could apply here because Cook filed for bankruptcy on June 4, 2020, about two months after she filed the current litigation, in which she claimed damages in excess of $25,000. *See* Complaint, p. 7; and Docket for Bankruptcy Case No. 3:20-bk-31450, attached to Substitution Motion, p. 1-2. The Chapter 13 bankruptcy petition that Cook filed specifically required disclosure of whether the petitioner had been a party to any legal action within the year prior to filing for bankruptcy. Cook answered "no" both when she filed the petition and when she filed an amended petition on July 16, 2020. *See* Motion to Dismiss (Dec. 2, 2020), Ex. A, p. 26, and Ex, D, p. 6. Cook also denied in the original petition that she had any legal claims against third parties, and she did not correct that when she amended the petition. Ex. A at p. 15.

**{¶ 39}** The bankruptcy court accepted Cook's position, as an October 24, 2020 order was filed confirming her Chapter 13 plan. See Ex. E attached to the Motion to Dismiss.

**{¶ 40}** In the context of bankruptcy proceedings, the Sixth Circuit Court of Appeals has applied an exception (or third prong) to the analysis, which is that " 'judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence.' " *White*, 617 F.3d at 476, quoting *Browning*, 283 F.3d at 776. In deciding whether a party's "conduct resulted from mistake or inadvertence," the Sixth Circuit

"considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *Id.* at 478.

{¶ 41} Cook argues that intent is a factual issue to be resolved at trial. However, this is not always true, because "intent is rarely provable by direct evidence, it may be inferred from the 'totality of the circumstances.' " *Davis v. Sun Refining & Marketing Co.*, 109 Ohio App.3d 42, 56, 671 N.E.2d 1049 (2d Dist.1996), quoting *Klapchar v. Dunbarton Properties, Ltd.*, 5th Dist. Stark No. CA-8521, 1991 WL 249432, *2 (Nov. 4, 1991).

{¶ 42} In contrast to Cook's position, Appellees argue that " '[a] motive to conceal claims from the bankruptcy court always exists as a matter of law, since "it is always in a Chapter 13 petitioner's interest to minimize income and assets." ' " Appellees' Brief, p. 14-15, quoting *Moore v. Hodge*, 1st Dist. Hamilton No. C-180633, 2019-Ohio-4752, ¶ 14, which, in turn, quotes *Saha*, 10th Dist. Franklin No. 12AP-590, 2013-Ohio-4203, at ¶ 19.[2]

{¶ 43} This legal presumption about motive applies, however, to whether a plaintiff "received potential financial benefits from concealing the claim, and thus had a motive to do so." *Stanley v. FCA US, LLC*, N.D.Ohio No. 3:19-cv-640, 2021 WL 5760546, *6 (Dec. 3, 2021). *See also Davis v. Fiat Chrysler Autos. U.S., LLC*, 747 Fed.Appx. 309, 316 (6th Cir.2018). Once that presumption is established, "the burden shifts to Plaintiff to set forth

---

[2] *Moore's* reference to *Saha* is incorrect, as *Saha* does not contain such a quote in paragraph 19 or at any other place in the opinion. *See Saha*, 10th Dist. Franklin No. 12AP-590, 2013-Ohio-4203. The Tenth District Court of Appeals did make such a quote in a later decision in *Saha*. *See Saha v. Research Institute at Nationwide Children's Hosp.*, 10th Dist. Franklin No. 18AP-661, 2019-Ohio-1792, ¶ 19 (quoting from the trial court's decision), and ¶ 33 (quoting from *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 426 (6th Cir. 2005), and *White*, 617 F.3d at 479).

evidence showing a lack of bad faith." *Stanley* at *7, citing *White*, 617 F.3d at 479, and *Finney v. Volvo Group N. Am.*, LLC, 562 B.R. 914, 918 (M.D.Tenn 2015). *See also Moore* at ¶ 14. Thus, while Cook's motive to conceal could have been inferred as a matter of law, she was still allowed to establish that she had not acted in bad faith.

**{¶ 44}** "The Sixth Circuit has made clear that the bad faith analysis for applying judicial estoppel in the bankruptcy context generally focuses on three attributes: effort, effectiveness, and timing. To avoid estoppel, a party generally must show they made a good-faith, effective effort to inform the bankruptcy court about the potential claim." *Couch v. Certified Flooring Installation, Inc.*, 439 F.Supp.3d 964, 972 (S.D.Ohio 2020), citing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 898-899 (6th Cir. 2004). "Likewise, a court is less inclined to find bad faith when the party attempted to inform the bankruptcy court about the potential action *before* a motion to dismiss forced the party's hand." (Emphasis sic.) *Id.*, citing *Newman v. Univ. of Dayton*, 751 Fed. Appx. 809, 814-815 (6th Cir.2018).

**{¶ 45}** In the case before us, the trial court's decision was quite short – just about a page long. After noting Cook's claim that her failure to disclose had been inadvertent, the court stated:

> However, notwithstanding the offer of Plaintiff's counsel to contact his client's bankruptcy counsel, there was no affirmative action to correct the error *or any evidence before the Court as to why or how the Plaintiff herself did not disclose this action to her bankruptcy lawyer, if in fact she did not.* Ohio courts have held, as urged by Defendants, that a motive to

conceal claims from the bankruptcy court always exists, because it is always in the best interest of a petitioner to minimize income and assets. *See, e.g. Moore v. Hodge*, 2019-Ohio-4752.

(Emphasis added.) Order and Entry Sustaining Defendant's Motion to Dismiss (Sept. 9, 2021), p. 1.

**{¶ 46}** However, contrary to the trial court's statement, Cook's affidavit indicates that she did, in fact, tell her bankruptcy attorney about the pending lawsuit. *See* Substitution Motion, Cook Affidavit.

**{¶ 47}** Specifically, Cook stated in the affidavit that she had decided in late spring 2020 that she needed to investigate bankruptcy protection. As a result, she contacted attorney Tim Deerfield to discuss the bankruptcy. Cook further said that she told Deerfield she had been terminated from her job and that a lawsuit was pending in Montgomery County Common Pleas Court. Cook Affidavit at ¶ 3-5. Cook's affidavit then said that she had decided to file bankruptcy and retained Deerfield; that he and his staff had prepared the bankruptcy papers; and that they had not given her an opportunity to review the papers before they were filed. *Id.* at ¶ 6-7. In addition, Cook stated that she had had no intention of hiding the fact of the pending lawsuit and that she did not have any idea that her claim against Appellees had been omitted from the bankruptcy filing until she learned of the motion to dismiss. *Id.* at ¶ 8-9.

**{¶ 48}** While Cook did not refer to specific dates in her affidavit, the structure of the outlined facts indicates that Cook did inform her bankruptcy attorney at the outset about the pending lawsuit. Furthermore, although Cook should have reviewed the documents

before signing, she says she was not given the opportunity. The signatures on the original petition filed on June 4, 2020, and on the amended documents filed on July 16, 2020 were electronic; they were not signed by hand, with Cook's signature. Motion to Dismiss, Ex. A at p. 6, 33, and 40; Ex. C, p. 13; and Ex. D at p. 9. Therefore, as the record stands, there is nothing contradicting Cook's claim, and part of the basis for the trial court's decision was simply incorrect.

**{¶ 49}** Accordingly, the trial court's decision must be reversed. This is not to say that Cook will ultimately prevail against a judicial estoppel claim. We express no opinion on that point.

## D. Standing

**{¶ 50}** In their brief, Appellees have offered an alternate basis for affirming the trial court's decision. We will address this point, because "[a]n appellate court may affirm based on different reasoning than found by a trial court, but an appellate court cannot disturb a judgment or order that is legally correct based on different reasoning." *John A. Becker Co. v. Jedson Eng., Inc.*, 2018-Ohio-3924, 121 N.E.3d 788, ¶ 19 (2d Dist.), citing *State ex rel. Sommers v. Perkins Local Schools Bd. of Edn.*, 2017-Ohio-7991, 98 N.E.3d 1117, ¶ 26 (6th Dist.). "The fundamental questions in an appeal are, one, whether the appealed decision itself is erroneous and, two, whether that error is prejudicial. A decision that achieves the right result must be affirmed, even if the wrong reasoning is used to justify the decision, because an error in reasoning is not prejudicial." *Id.*

**{¶ 51}** According to Appellees, Cook lacked standing to pursue her employment

claims in the trial court because all property, including civil claims, is the property of the bankruptcy estate.   Consequently, only the bankruptcy trustee had standing to pursue such claims, unless the trustee abandoned them.   In their brief, Appellees equate a lack of standing with subject matter jurisdiction and also suggest that we should dismiss the appeal on this basis.   Appellees' Brief at p. 17.

**{¶ 52}** Under established law, we have the ability to consider our jurisdiction and may even raise it on our own motion.   *E.g., In re Guardianship of Igah*, 2d Dist. Montgomery No. 26416, 2015-Ohio-4511, ¶ 14, citing *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997).   As an example, "failure to comply with time requirements of App.R. 4(A) is a jurisdictional defect, which is fatal to an appeal."   *CitiBank v. Abu-Niaaj*, 2d Dist. Greene No. 2011-CA-45, 2012-Ohio-2099, ¶ 7, citing *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 17.   (Other citations omitted.)   Likewise, lack of a final appealable order requires that we dismiss an appeal for lack of jurisdiction.   *Igah* at ¶ 18.

**{¶ 53}** " 'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits' and 'defines the competency of a court to render a valid judgment in a particular action.' "   *Cheap Escape Co. v. Haddox, LLC*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 6, quoting *Morrison v. Steiner*, 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972).   The subject matter jurisdiction of courts of appeals is granted by Ohio Constitution, Article IV, Section 3(B)(1)(f), which gives them original jurisdiction over certain matters like mandamus actions, and in "any cause on review as may be necessary to its complete determination."

{¶ 54} In addition, courts of appeals have "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district" (other than direct appeals of judgments imposing death), and "such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies." *Id.* at (B)(2).

{¶ 55} However, jurisdiction is also restricted by R.C. 2505.03(A), which only allows appellate courts to consider "final orders" in cases over which the court has jurisdiction. *Flynn v. Fairview Village Retirement Community, Ltd.*, 132 Ohio St.3d 199, 2012-Ohio-2582, 970 N.E.2d 927, ¶ 5. This is why we must dismiss cases for lack of final appealable orders.

{¶ 56} In the case before us, a final appealable order existed because the trial court dismissed Cook's action. We also clearly have jurisdiction under Section 3, Article IV of the Ohio Constitution to review the trial court's final order. Moreover, we have not found the trial court's judicial estoppel dismissal to be proper. And finally, the trial court has not yet considered whether the bankruptcy trustee should be allowed to be substituted as the "real party in interest."

{¶ 57} There is also a difference between subject matter jurisdiction and standing to pursue an action, although courts often confuse the matter by equating the terms "jurisdiction" and "standing" without considering the difference between "subject matter jurisdiction" and the more general notion of jurisdiction.

{¶ 58} "The general term 'jurisdiction' can be used to connote several distinct

concepts, including jurisdiction over the subject matter, jurisdiction over the person, and jurisdiction over a particular case." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 18, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11-12. As noted in *Kuchta*:

> Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. * * * A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. * * * A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. * * * This latter jurisdictional category involves consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void.

(Citations omitted.) *Kuchta* at ¶ 19.

**{¶ 59}** While standing is a "jurisdictional" requirement, a lack of standing does not invalidate a court's subject matter jurisdiction. *Id.* at ¶ 20. *See also Lundeen v. Turner*, 164 Ohio St.3d 159, 2021-Ohio-1533, 172 N.E.3d 150, ¶ 25 ("a plaintiff's alleged lack of standing to sue on a note and maintain a foreclosure action does not affect the subject-matter jurisdiction of a common pleas court to entertain a foreclosure action"). Instead, "[a] determination of standing necessarily looks to the rights of the individual parties to bring the action, as they must assert a personal stake in the outcome of the action in

order to establish standing." *Id.* at ¶ 23, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27. "Lack of standing is certainly a fundamental flaw that would require a court to dismiss the action, * * * and any judgment on the merits would be subject to reversal on appeal. But a particular party's standing, or lack thereof, does not affect the subject-matter jurisdiction of the court in which the party is attempting to obtain relief." (Citations omitted.) *Id.*

**{¶ 60}** In the context of judicial estoppel and bankruptcy proceedings, federal courts have also distinguished between Article III jurisdiction and standing. *See Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019) (holding that bankruptcy debtor was the real party in interest to pursue tort claims against defendants).

**{¶ 61}** Federal courts also have distinguished between the interests of Chapter 7 debtors and those filing under Chapter 13 (as is the case here). *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 343 (4th Cir. 2013) (joining five other Circuit Courts of Appeal that had considered the question, and concluding that "Chapter 13 debtors have standing to bring causes of action in their own name on behalf of the estate").[3]

---

[3] The Sixth Circuit Court of Appeals is not one of these circuits. Recently, the Sixth Circuit decided a case on other grounds and stated that it, therefore, "need not resolve this question today" as to whether a Chapter 13 debtor in general " 'is the real party in interest' or whether he is 'an interloper, trying to prosecute a claim that belongs to his estate in bankruptcy.' " *Kolesar v. Allstate Ins. Co.*, 814 Fed.Appx. 988, 990 (6th Cir. 2020), quoting *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006). *See also Perry v. Allstate Indemnity Co.*, N.D.Ohio No. 1:16-cv-01522, 2021 WL 3560195, *3 (Aug. 12, 2021) (stating, after discussing *Kolesar*, that "the overwhelming authority militates in favor of finding that a debtor in a Chapter 13 bankruptcy [proceeding] is the real party in interest to prosecute an action"); *In re Connor*, M.D.Tenn. No. 3:21-bk-00276, 2022 WL 108356, *4 (Jan. 4, 2022) (noting that six Circuit Courts of Appeals had ruled in favor of the "concurrent jurisdiction" of the trustee and a Chapter 13 debtor. The court also projected that the Sixth Circuit would rule in favor of this idea as well.) The circuit courts in question are the Second, Third, Fourth, Seventh, Tenth, and Eleventh Circuit Courts of

{¶ 62} *Wilson* provided the following explanation of the differences between Chapter 7 and Chapter 13 cases:

> Chapter 7 and Chapter 13 provide two distinct methods for an individual to cure his indebtedness. Chapter 7 adopts the "much more radical solution," *Cable* [v. *Ivy Tech State College*, 200 F.3d [467] at 472 [7th Cir. 1999], of requiring the debtor to relinquish possession of the estate to the trustee for liquidation and distribution to creditors. *See* 11 U.S.C. § 704. To effectuate this purpose, the trustee's management of the estate – including causes of action that are part of the estate – must necessarily be free from interference by the debtor. *Cable*, 200 F.3d at 472. Thus, under Rule 17's real-party-in-interest requirement, it is the Chapter 7 trustee, but not the Chapter 7 debtor, who may possess standing on behalf of the estate to bring a pre-petition claim. * * * [4]

> Chapter 13, however, provides a different framework. Under Chapter 13, the debtor remains in possession of the property of the estate and cures his indebtedness, under the supervision of the trustee, by way of regular payments to creditors from his earnings through a court approved payment plan. *See* 11 U.S.C. §§ 1306(b), 1322; *Olick* [v. *Parker & Parsley*

---

Appeals. *Id.*

[4] *Cable* was overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965, 967, fn. 1 (7th Cir. 2013), which overruled various prior decisions "to the extent that they suggest a plaintiff may not rely on 'self-serving' evidence to create a material factual dispute."

*Petroleum Co.*], 145 F.3d [513] at 516 [(2d Cir.1998)].

(Footnote added; citations omitted.)   *Wilson* at 343-344.

**{¶ 63}** In this context, *Wilson* went on to note that:

Chapter 13 also modifies other powers generally given to the debtor and trustee.   For example, not only does the Chapter 13 debtor retain possession of the property of the estate, the Chapter 13 debtor also assumes "exclusive of the trustee, the rights and powers of a trustee[,]" 11 U.S.C. § 1303, found in many of the provisions of § 363 regarding the general administration of bankruptcy estates.   In other words, in addition to his power to possess property, the Chapter 13 debtor is explicitly given the authority, exclusive of the trustee, to use, sell, or lease property of the estate in certain circumstances.   As the Seventh Circuit recognized, "[i]t would frustrate the essential purpose of § 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit [of] the estate."   *Cable*, 200 F.3d at 473.

Implicit in that act of possession, as authorized by statute, is the right of the Chapter 13 debtor – unlike the Chapter 7 debtor – to sue in his own name in such actions pursuant to Rule 17(a) of the Federal Rules of Civil Procedure.   *See* Fed.R.Civ.P. 17(a)(1)(G) (permitting "a party authorized by statute" to sue in his or her own name without joining the person for whose benefit the action is brought).   Accordingly, because the Chapter 13 debtor is explicitly given the power to possess and use the property, and

implicit within that use is the permissible maintenance of a cause of action that is part of the estate, the Chapter 13 debtor has standing to maintain a prepetition claim.

Federal Rule of Bankruptcy Procedure 6009 envisions the same result. Under Rule 6009 "the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor...." Fed. R. Bankr.P. 6009; see *Smith* [*v. Rockett*], 522 F.3d [1080], at 1082 & n. 2 [(10th Cir.2008)] (recognizing that although "debtor in possession" is a term of art in the Chapter 11 context, a Chapter 13 debtor possesses the Chapter 13 estate and has thus been considered analogous to a Chapter 11 debtor due to their enhanced representative and operational capacities); *Cable*, 200 F.3d at 472 (same). In this sense, the Chapter 13 debtor "steps into the role of trustee and exercises concurrent authority to sue and be sued on behalf of the estate." *Cable*, 200 F.3d at 473 (citing Fed. R. Bankr.P. 6009).

*Wilson*, 717 F3d. at 344. *See also Olick,* 145 F.3d at 516 (noting that "[i]t is also the case that in Chapter 13 proceedings (unlike Chapter 7 proceedings) the creditors' recovery is drawn from the debtor's earnings, not from the assets of the bankruptcy estate; it is only the Chapter 13 debtor who stands to gain or lose from efforts to pursue a cause of action that is an asset of the bankruptcy estate. Accordingly, the trustee's participation in such an action is generally not needed to protect the Chapter 13 creditors' rights.")

{¶ 64} Like Fed.R.Civ.P. 17(a)(1)(G), Ohio's Civ.R. 17(A), which deals with real

parties in interest, provides that "a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought."

**{¶ 65}** For purposes of standing, "[a] real party in interest is directly benefited or injured by the outcome of the case rather than merely having an interest in the action itself." *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 226, 685 N.E.2d 754 (1997). "To succeed in establishing standing, plaintiffs must show that they suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

**{¶ 66}** When Cook filed suit on April 3, 2020, she clearly had standing to sue Appellees. Cook's complaint alleged that Appellees had caused her injury and damages by unlawfully terminating her employment, by failing to pay wages, by failing to pay minimum wages, and by illegally accessing her electronically-stored information. At that time, Cook had not yet filed for bankruptcy, and standing existed.

**{¶ 67}** Whether the bankruptcy trustee subsequently became a real party in interest, depriving Cook of standing, or whether Cook had a concurrent interest for purposes of standing is for the trial court to decide. Accordingly, we cannot dismiss Cook's appeal based on lack of standing, nor can we affirm the trial court's dismissal on the alternate ground that Appellees have advanced.

**{¶ 68}** Based on the preceding discussion, Cook's sole assignment of error is

sustained.

### III.   Conclusion

**{¶ 69}** Cook's assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Jason P. Matthews
Matthew C. Schultz
Matthew D. Stokely
Kristina Elizabeth Curry
Hon. Timothy N. O'Connell, Administrative Judge